IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENN ASIAN SENIOR SERVICES | : | |
| d/b/a PENN ASIAN JUBILEE CENTER, | : | CIVIL ACTION |
| *Plaintiff* | : | |
| v. | : | |
| | : | |
| SELECTIVE INSURANCE COMPANY | : | |
| OF SOUTH CAROLINA et al., | : | No. 20-4919 |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                                        SEPTEMBER 30, 2021

With insurance, the purchaser gets what it bargains for. Penn Asian Senior Services purchased property insurance to protect its property from damage. When it had to suspend its business operations because of the COVID-19 pandemic, it sought to recover under that insurance policy for lost income and expenses. But its insurance policy reimburses for physical damage, not mere economic loss. Because Penn Asian has not stated a claim for relief under its insurance policy, the Court grants the insurer's motion to dismiss the complaint.

### BACKGROUND

Penn Asian, a non-profit, offers "adult daycare" in Philadelphia. Am. Compl. ¶ 1, Doc. No. 7. On March 4, 2020, it renewed its property insurance from Selective Insurance Company of South Carolina. *Id.* ¶ 18. Two weeks later, all "non-essential businesses" in Philadelphia had to close their doors, including Penn Asian, because of the COVID-19 pandemic. *Id.* ¶ 63. Penn Asian filed an insurance claim, requesting coverage for its ongoing expenses, but Selective denied the claim. *Id.* ¶¶ 6–7. So Penn Asian sued. It seeks a declaratory judgment that its insurance policy covers its financial losses from the pandemic and requests damages for breach of contract. *Id.* ¶ 8. Selective moves to dismiss the complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARDS

In its complaint, a plaintiff must set out "a legally cognizable right of action" and "enough facts" to make that cause of action "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (internal quotation mark omitted). On a motion to dismiss for failure to state a claim, the Court takes all well-pleaded facts as true and draws all inferences in the light most favorable to the plaintiff. *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In addition to the complaint, the Court may consider "exhibits attached to the complaint, matters of public record," and "undisputedly authentic documents" that the claims rest upon. *Id.* at 230.

For a breach-of-contract claim, the plaintiff must plausibly plead not only that it has an insurance contract but that the contract covers its claimed injuries. *See Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). The Court interprets the terms and scope of the contract as a matter of law. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997). In doing so, the Court "ascertain[s] the intent of the parties as manifested by the terms used in the written insurance policy." *401 Fourth St., Inc. v. Invs. Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005). If the terms are "clear and unambiguous," the Court gives them their plain meaning. *Id.* But if a term is ambiguous, the Court construes it "in favor of the insured." *Id.*

## DISCUSSION

Once the pandemic hit, Penn Asian had to close its doors to the public, but its fixed operating expenses did not stop. To recover those expenses, Penn Asian turned to its property insurance. The policy, an "all-risks" policy, reimburses for damage and loss from all causes not expressly excluded by the policy. For its purely economic losses, Penn Asian seeks to recover under three provisions: the Business Income, Extra Expense, and Civil Authority provisions.

Selective counters that these provisions do not cover Penn Asian's losses, for Penn Asian experienced no *physical* damage to its property. Even if it had, Selective asserts, the policy expressly excludes losses caused by viruses.

This Court exercises diversity jurisdiction over the damages claim under 28 U.S.C. § 1332 and jurisdiction over the declaratory judgment claim under 28 U.S.C. § 2201. Sitting in diversity, this Court must predict what the Pennsylvania Supreme Court would do. *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 225 (3d Cir. 2020). The insurance policy unambiguously requires *physical* loss of the premises, not merely the loss of certain uses of the property. Plus, the policy unambiguously bars recovery for damage caused by viruses. Thus, the Court finds that the Pennsylvania Supreme Court would very likely decide that Penn Asian cannot recover for its pure economic loss under its property insurance.

## I.     The insurance policy does not cover the type of harm Penn Asian experienced

Penn Asian's insurance policy reimburses for "direct physical loss of or damage to" Penn Asian's building and its furnishings. Policy, Doc. No. 10-3, at 78. If Penn Asian experiences property damage, Selective will pay for the repairs. And if Penn Asian must suspend its operations during those repairs, Selective will "pay for the actual loss of Business Income" during the repairs, plus any "Extra Expense" needed to minimize disruptions or get the business going again. Policy at 94. Resting on these, the Loss of Business Income and Extra Expense Provisions, Penn Asian claims that Selective must cover its operating expenses during the shutdown. But, as Selective points out, Penn Asian did not experience "direct physical loss of or damage to" its building. Penn Asian insists that it did, because it temporarily lost the *use* of its building, at least for the purpose of conducting its daycare services. But the contract's terms cannot be stretched so far.

### A. The policy requires physical loss of the premises, not merely loss of certain uses

The policy does not define "direct physical loss" or "damage." On its own, "loss" could be read broadly, to include "the disadvantage [one] suffer[s] when a valuable and useful thing is taken away," even temporarily. Am. Compl. ¶ 39. Yet the policy protects not against "loss" but against "*direct physical* loss." That is, the loss must involve "immediate" harm to something "real" and "tangible." *Direct* (def. 3), *Black's Law Dictionary* (11th ed. 2019); *Physical* (def. 2), in *id.*

The policy pairs "loss of" the property with "damage to" it. True, as Penn Asian points out, the two words, separated by "or," must be read to cover separate things. Still, one informs the other. Paired together, "damage to" contemplates "'a distinct, demonstrable, and physical alteration' of its structure," while "loss of" envisions total destruction, such that the "structure is uninhabitable and unusable." *Port Authority of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235–36 (3d Cir. 2002) (quoting 10 *Couch on Insurance* § 148.46 (3d ed. 1998)); *see Greisler Bros., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 46 Pa. D. & C.2d 261, 263 (Pa. Ct. C.P. 1968) (contrasting "loss of any portion" of insured product with "damage to" the product).

The rest of the Business Income Provision confirms this. Selective will reimburse for business income lost while operations are suspended "during the 'period of restoration.'" Policy at 95. This "period of restoration" is the time for the building to be "repaired, rebuilt or replaced" or, if it cannot be fixed, for Penn Asian to find a "new permanent location." Policy at 103. Temporarily closing the building to the public, as Penn Asian had to, requires no period of restoration to repair or rebuild.

### B. Penn Asian has not plausibly plead that its building experienced physical damage

Thus, Penn Asian's losing the use of its property for its daycare services is not enough to state a claim under its insurance contract. Penn Asian must also plausibly plead some sort of

physical damage to its premises. Penn Asian proposes two theories for how its building was damaged. Both fall flat.

First, Penn Asian argues that the building had "perceived" physical damage because the public saw "indoor establishments" as "unsafe." Doc. No. 16 at 10–11. But the policy reimburses for *actual* "direct physical loss," not *perceived* loss.

Second, Penn Asian posits that the building was damaged because it was contaminated with COVID-19. In some situations, contamination "may make a building uninhabitable," resulting in "a direct loss to that building." *Hetrick v. Valley Mut. Ins. Co.*, 15 Pa. D. & C. 4th 271, 274 (Pa. Ct. C.P. 1992). For example, an oil spill might pollute the ground water, or bacteria a well, such that no one in the house can use the water. *Id.*; *Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 824 (3d Cir. 2005). Or so much asbestos might be present in the air that no one can safely work in the office building. *Port Authority*, 311 F.3d at 235. In those situations, the building is not just closed to certain uses; it is unfit for all uses.

Penn Asian does not plead that COVID-19 made its premises "uninhabitable and unusable." *4431, Inc. v. Cincinnati Ins. Cos.*, 504 F. Supp. 3d 368, 385 (E.D. Pa. 2020). Plausibly, the possible transmission of the virus made it dangerous for its normal daycare services to go on. But that does not mean that no one could safely enter the premises. Instead, its building "was inhabitable and usable, though on a limited basis." *Kessler Dental Assocs., P.C. v. Dentists Ins. Co.*, 505 F. Supp. 3d 474, 480 (E.D. Pa. 2020).

Penn Asian has not plausibly plead physical damage to or loss of its property. Thus, it cannot recover for economic loss under the Business Income and Extra Expense Provisions.

**C. Penn Asian has not plausibly plead that nearby buildings experienced physical damage**

To get around this, Penn Asian points to another part of the policy, the Civil Authority Provision, which compensates for "the actual loss of Business Income" when a neighboring property is "damaged" and a "civil authority … prohibits access" to Penn Asian's building because the nearby damage has created "dangerous physical conditions" or the authorities need "unimpeded access to the damaged property." Policy at 95. The stay-at-home orders came from civil authorities, and, according to Penn Asian, those orders addressed the COVID-19 pandemic, a dangerous physical condition. Even if true, Penn Asian has not pled that a nearby property experienced damage from a "Covered Cause of Loss," that is, "direct physical loss or damage." Policy at 78, 95.

Penn Asian hypothesizes that some unidentified number of its neighbors experienced physical damage because the virus is "everywhere" and having the "virus on surfaces renders the property damaged." Pl.'s Br. 12–13, Doc. No. 16-1. But, as explained above, the virus did not alter some "structural or physical" aspect of the buildings, just the uses to which those buildings could temporarily be put. *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, 507 F. Supp. 3d 616, 624 (E.D. Pa. 2020).

Besides, Penn Asian does not plead that the orders "prohibit[ed] access" to its building, just that they "suspend[ed]" its business. Policy at 95; Am. Compl. ¶ 63; *accord 4431, Inc.*, 504 F. Supp. 3d at 386. Indeed, the stay-at-home orders themselves, which Penn Asian attached to its complaint, confirm this. Though banning the "*operation* of non-essential businesses," the orders allow entry to their premises, even permitting businesses to keep certain employees "on-site." *Id.* at 421, 425.

Nor has Penn Asian plausibly pled that the orders shut down Penn Asian's business "as a result of" damage to nearby buildings rather than "fears of future" infections among the population. Policy at 95; *United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 134–135 (2d Cir. 2006); *cf. Brothers, Inc. v. Liberty Mut. Fire Ins. Co.*, 268 A.2d 611, 613–14 (D.C. 1970) (no coverage for business income lost due to curfew and regulations imposed in response to riots when property experienced "no physical damage" from riots). In fact, the orders show the opposite, explaining that they were put in place to "limit the spread of COVID-19" due to "close contact" between people, not because the buildings themselves posed a danger to the public. Doc. No. 1-4, at 412.

In short, Penn Asian cannot seek recovery for its lost income under the Civil Authority Provision either.

## II.    The insurance policy expressly excludes coverage for all losses caused by viruses

Even if Penn Asian met the requirements for the Business Income or Civil Authority Provisions, it still could not recover. Penn Asian's insurance policy is an "all-risk" policy, which means that the policy pays for damage from all sources except those that are specifically excluded. One of those specific exclusions is the Virus Exclusion, which provides that Selective "will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Policy at 105. As Penn Asian pleads, COVID-19 is a "highly contagious respiratory virus" that has "caused the death of over 250,000 individuals throughout the United States." Am. Compl. ¶ 5. Because Penn Asian's shutdown "result[ed] from" COVID-19, the Virus Exclusion bars recovery for its loss. Policy at 105.

Despite this, Penn Asian insists that the Virus Exclusion does not apply here. For its loss was caused not by the virus itself but by the pandemic, that is, the "wide variety of measures designed to contain" the virus, like stay-at-home orders. Pl.'s Br. 18. But the response cannot be separated from the virus that caused it. *Mareik Inc. v. State Farm Fire & Cas. Co.*, ___ F. Supp. 3d ___, 2021 WL 1940647, at *6 (E.D. Pa. 2021). The shutdown orders "would not have occurred" but for the virus. *Id.*

Looking for another way around the exclusion's plain text, Penn Asian claims that the Virus Exclusion does not bar its claim for expenses, like payroll, because the exclusion mentions only "loss or damage." Policy at 105. For support, Penn Asian points out that the policy elsewhere differentiates between "loss of business income" and "operating expenses." Policy at 71. But that differentiation means nothing here. The Virus Exclusion excludes coverage for all "loss," full stop. Indeed, Penn Asian itself recognizes that "loss" is a broad term, defining it as "[t]he amount of an insured's financial detriment." Am. Compl. ¶ 39(d). Paying expenses, like payroll, certainly counts as financial detriment. *Accord Kessler Dental*, 505 F. Supp. 3d at 479 ("Both the failure to collect income and the payment of continued expenses fall within" the plain meaning of "loss.").

Losing on the argument of the text, Penn Asian asserts that Selective should be estopped from enforcing the Virus Exclusion. Litigants may not "play[ ] fast and loose with the judicial system by adopting whatever position suits the moment." *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1192 (Pa. 2001). If a litigant takes one position in front of a regulatory agency but an opposite position in later litigation, the litigant will be held to its earlier position. *Id.* at 1192–93. Penn Asian insists this doctrine of regulatory estoppel applies here, because two insurance trade groups had made representations to regulators in the past about virus exclusions.

But Penn Asian does not plead that *Selective* took a position before state regulators, or plausibly plead that the trade groups took a position on Selective's behalf. *See* Am. Compl. ¶¶ 102–06. Moreover, Penn Asian has not plead that Selective's positions then and now are inconsistent. Back in 2006, trade groups represented that "property policies," like the one at issue here, "have not been a source of recovery for losses involving contamination by disease-causing agents." Am. Compl. ¶ 104. That is the exact position Selective takes today. Still, Penn Asian claims, regulatory estoppel should apply because the trade group's prior position was untrue: property policies *had* been used to recover for microbial contamination. Am. Compl. ¶¶ 106–07. But estoppel cares not about the truth of a litigant's prior positions, just whether he took them. Penn Asian's attempt to rewrite that doctrine fails.

Penn Asian has not plausibly overcome the plain language of the Virus Exclusion. Thus, that exclusion bars Penn Asian's claim.

### III.    The policy's exclusion for shutdowns does not apply

Selective points to another exclusion, the Ordinance or Law Exclusion, that it asserts also bars recovery. Under this exclusion, Penn Asian cannot recover for losses from "[t]he enforcement of or compliance with an ordinance or law … [r]egulating the construction, *use*, or repair of any property" or "[r]equiring the tearing down of any property." Policy at 106 (emphasis added). To be sure, the municipal stay-at-home orders "have the force and effect of law." 35 Pa. Cons. Stat. § 7301(b). These orders, Selective asserts, regulate the property's "use," because the orders banned Penn Asian from using its premises for its daycare services.

But that reading of "use" ignores the term's context. "Use" is paired in the policy with "construction" and "repair," two words that point to the "physical aspects of the property." *Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the Se.*, 516 F. Supp. 3d 450, 461 (E.D. Pa. 2021).

Given that pairing, the regulation on use must pertain to the "physical use" of the property, not the use of a property for a particular purpose. *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 506 F. Supp. 3d 360, 380 (E.D. Va. 2020). For example, the exclusion might apply if an ordinance forbade using the covered building because it was structurally unsound, but not if an ordinance declared that an otherwise-habitable building is no longer zoned for a certain commercial purpose. Thus, this exclusion provides no out for Selective.

## IV. Penn Asian has not plausibly plead that its reasonable expectations should overcome the policy's plain language

Though it loses on the policy's plain language, Penn Asian objects that it *expected* its property insurance to cover the losses it experienced during the pandemic. In Pennsylvania, insurers cannot orally promise one thing and then hand over a cumbersome written contract that says another. *Collister v. Nationwide Life Ins. Co.*, 388 A.2d 1346, 1353 (Pa. 1978). If insurers "abuse their position" and "create[] in the insured a reasonable expectation of coverage," "that expectation will prevail over the language of the policy." *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1311 (3d Cir. 1994). For expectations to control, the insurers must engage in some sort of misconduct, like "actively providing misinformation about the scope of coverage" or "failing to notify the insured of changes in the policy." *Id.* at 1312. Plus, of course, the insured's expectation must be "reasonable." *Collister*, 388 A.2d at 1354.

Penn Asian pleads that it "reasonably expected" the policy to "protect against losses" from "a pandemic." Am. Compl. ¶ 23. But that "bare assertion" is not enough. *Twombly*, 550 U.S. at 556. Penn Asian has not identified a misrepresentation that Selective made about its coverage, much less explained how any such misrepresentation made Penn Asian believe that the policy covered losses due to pandemics despite plain language to the contrary. So the Court dismisses

Penn Asian's claims, but without prejudice, in case it can provide "enough fact[s]" to make out a plausible claim for reasonable expectations. *Id.*

CONCLUSION

"[T]he insured gets what protection he pays for." *Cleland Simpson Co. v. Firemen's Ins. Co. of Newark, N.J.*, 140 A.2d 41, 44 (Pa. 1958). Penn Asian purchased "commercial property coverage." Policy at 34. By its terms, that policy reimburses for property damage, not pure economic loss. Because Penn Asian has plausibly pled only the latter, the Court grants Selective's motion to dismiss. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE